**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

|  |  |
|---|---|
| **ANNAMARIE ZAMPITELLA,**<br><br>                              **Plaintiff,**<br><br>        v.<br><br>**VIRTUA-WEST JERSEY HEALTH SYSTEM, INC., et al.,**<br><br>                     **Defendants.** | **Civil No. 23-3824 (CPO/MJS)** |

**O P I N I O N   A N D   O R D E R**

This discovery dispute concerns three Requests for Production (RFP) served by defendant Virtua-West Jersey Health System, Inc. ("Defendant"). Defendant seeks an order requiring plaintiff Annamarie Zampitella ("Plaintiff") to produce documents in response to RFPs 4, 5, and 6 [ECF No. 11]. Plaintiff opposes the request. [ECF No. 12]. After convening a conference with counsel on April 12, 2024, the Court ordered each party to file supplemental letters and directed Defendant to reframe and refine the RFPs [ECF No. 14]. The Court has received the submissions [ECF Nos. 15 and 16] and the matter is fully briefed. For the reasons set forth herein, Defendant's request is **GRANTED** in part and **DENIED** in part as detailed herein.

Background

Defendant employed Plaintiff as an equipment service technician from November 2018 until her March 17, 2023 termination. ECF No. 1-2 ¶ 5. In October 2022, Plaintiff was approved for intermittent leave under the Family and Medical Leave Act ("FMLA") and the New Jersey Family Leave Act ("FLA") in order to assist with care for her father. ECF No. 1-2 ¶¶ 12-13. In her complaint, Plaintiff alleges that her termination was motivated by her use of FMLA and FLA leave,

and asserts claims of associational discrimination under the New Jersey Law Against Discrimination ("NJLAD") (Count I), retaliation under the New Jersey Family Leave Act ("FLA") (Count II), interference under the FLA (Count III), retaliation under the Family and Medical Leave Act ("FMLA") (Count IV) and interference under the FMLA (Count V). Id. ¶¶ 44-53. Defendant contends that Plaintiff was terminated for time theft unrelated to her FMLA use. ECF No. 5 ¶ 33.

Standard

Federal Rule of Civil Procedure 26(b) governs discovery scope and limits. Under Rule 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Factors to consider include "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Id. Rule 26 also provides that "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable." Id. At the discovery stage, "courts construe relevancy broader" and "more liberally in favor of disclosure." Columbus Life Ins. Co. v. Wilmington Tr., N.A., 344 F.R.D. 207, 215 (D.N.J. 2023). "'[A]ny matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case'" is considered relevant. Burns v. SeaWorld Parks & Ent., Inc., Civ. No. 22-2941, 2023 WL 8041305, at *1 (E.D. Pa. Oct. 3, 2023) (quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978)). The boundaries of this relevancy standard are context-dependent, and the court may use its discretion to determine relevance. Salamone v. Carter's Retail, Inc., Civ. No. 09-5856, 2011 WL 310701, at *10 (D.N.J. Jan. 28, 2011). Although the scope of discovery is broad, "this

right is not unlimited and may be circumscribed." <u>Bayer AG v. Betachem, Inc.</u>, 173 F.3d 188, 191 (3d Cir. 1999).

Pursuant to Rule 37(a), a party may move to compel discovery and will bear the burden of showing that the requested information is relevant. <u>Columbus</u>, 344 F.R.D. at 215 (citing <u>Caver v. City of Trenton</u>, 192 F.R.D. 154, 159 (D.N.J. 2000)); Fed. R. Civ. P. 37(a). The opposing party must show "why the request is improper." <u>Burns</u>, 2023 WL 8041305, at *2. The court may use its discretion to limit discovery to allow "as much relevant material to be discovered as possible, while preventing unnecessary intrusions into the legitimate interests—including privacy and other confidentiality interests—that might be harmed by the release of the material sought." <u>Pearson v. Miller</u>, 211 F.3d 57, 65 (3d Cir. 2000); <u>see also</u> <u>Schmulovich v. 1161 Rt. 9 LLC</u>, Civ. No. 07-597, 2007 WL 2362598, at *1 (D.N.J. Aug. 15, 2007) ("[T]he [c]ourt has a responsibility to protect privacy and confidentiality interests."). Courts may also limit discovery where the burden of the request is likely to outweigh the benefits. <u>Takacs v. Union County</u>, Civ. No. 08-711, 2009 WL 3048471, at *1 (D.N.J. Sept. 23, 2009).

<u>Discussion</u>

Against this backdrop, the Court turns to the dispute at hand. Defendant's original RFPs were as follows:

> <u>RFP No. 4</u>
>
> Produce all activities on Facebook, Instagram, MySpace, LinkedIn, Twitter, TikTok, or any other social networking site from between October 5, 2022 through March 17, 2023.
>
> <u>RFP No. 5</u>
>
> Produce all travel records, including but not limited to public transportation usage, EZ Pass records, and vehicle toll receipts from between October 5, 2022 through March 17, 2023.

ECF No. 11

RFP No. 6

Produce logs of all activity on Venmo, CashApp, Zelle, or any other similar mobile-based payment application from between October 5, 2022 through March 17, 2023.

ECF No. 11 at 3-4.

Defendant's amended RFPs are now as follows:

RFP No. 4

Produce any posts or comments made by [Plaintiff] on Facebook, Instagram, MySpace, LinkedIn, Twitter, TikTok, or any other social networking site that mention, indicate, or describe [Plaintiff's] activities on the dates of leave [she] identified in [her] Answer to Interrogatory No. 9.

RFP No. 5

Produce any tickets, records, receipts, or any other documents relating to traveling or trips [Plaintiff] may have taken on the dates of leave [Plaintiff] identified in [her] Answer to Interrogatory No. 9.

RFP No. 6

Produce records showing bank transactions and activities, with redactions applied to [Plaintiff's] balance and account number, to the extent that they reflect any non-FMLA/FLA related activities on the dates [Plaintiff] identif[ied] in response to Interrogatory No. 9.

ECF No. 16 at 5.

The Court finds that the RFPs as originally drafted were overly broad, because they sought months of records that would have inevitably included troves of irrelevant information. See Ogden v. All-State Career Sch., 299 F.R.D. 446, 450 (W.D. Pa. 2015) ("Ordering plaintiff to permit access to or produce complete copies of [her] social networking accounts would permit defendant to cast too wide a net and sanction an inquiry into scores of quasi-personal information that would be irrelevant and non-discoverable."). The requests were also unduly burdensome, as they would have required Plaintiff to collect and produce scores of records. However, the reframed requests are

much more refined and direct. The question, therefore, is whether these requests are designed to lead to relevant information and are proportional to the needs of the case.

Overall, Defendant argues that it is entitled to the requested discovery in the reframed RFPs because Plaintiff "placed her emotional state, the severity of her family member's condition necessitating her FMLA/FLA leave, and her day-to-day activities during her period of leave at issue via this litigation." ECF No. 16 at 3. On the other hand, Plaintiff argues that there is "no dispute that FMLA abuse was **not** a consideration in Plaintiff's termination." ECF No. 15 at 1. She asserts that Defendant abandoned its investigation into her FMLA leave when it terminated her for time theft. ECF No. 15 at 1-2. For this reason, Plaintiff submits that "the requested discovery is not relevant to any claim or defense and is certainly not proportional to the needs of the case." Id. at 2. Though Plaintiff was unable to provide any caselaw responsive to the Court's April 17, 2024 Order [ECF No. 14], she correctly points out that "the Court has a responsibility to protect privacy and confidentiality interests." ECF No. 16 at 2.

The Court finds that, on the specific facts and record of this case, RFPs 4 and 5 as amended are crafted to lead to relevant information and are proportional to the needs of this case. The Court stresses, however, that the facts of this case support this finding. Plaintiff's day-to-day activities on dates when she took FMLA leave are relevant to proving whether she used her leave for its intended purpose, which is essential to the success of her FMLA claims. See Warwas v. City of Plainfield, 489 F. App'x 585, 588 (3d Cir. 2012) ("[A]n employer may defeat an FMLA claim if the discharge was based upon the employer's honest belief that the plaintiff either misused or failed to use her medical leave for the intended purpose."). Such evidence is likewise relevant to Plaintiff's potential damages. See McKennon v. Nashville Banner Pub. Co., 513 U.S. 352, 362-63 (1995) (holding that after-acquired evidence of employee misconduct discovered during litigation

may bar or limit available damages where misconduct would have been independent, legitimate grounds for termination). In the discovery context, the after-acquired evidence doctrine "should not be used to independently initiate discovery." Maxwell v. Health Ctr. of Lake City, Inc., No. 3:05-cv-1056, 2006 WL 1627020, at *5 (M.D. Fla. June 6, 2006). Here, Defendant maintains that it terminated Plaintiff's employment for unrelated time theft issues. However, Defendant further maintains that from October 2022 through February 2023, it noted fourteen total instances of Plaintiff utilizing FMLA/FLA leave in conjunction with paid time off or providing very little notice for when she would take such leave, and that it had this information reasonably supporting its suspicion of leave misuse at the time of Plaintiff's termination. ECF No. 16 at 5. Defendant has produced discovery to that effect. ECF No. 15 at 7.[1] Accordingly, this is not a scenario where Defendant seeks to conduct discovery on Plaintiff's FMLA use without a basis or on pure speculation; rather, here, Defendant has presented a pre-existing basis to believe the evidence exists based on its previous investigation.

In Robinson v. MGM Grand Detroit, LLC, Civ. No. 17-CV-13128, 2019 WL 244787, at *1 (E.D. Mich. Jan. 17, 2019), the plaintiff was fired for creating a false time record and filed an FMLA retaliation claim against the defendant. The district court found the defendant's requested discovery of plaintiff's social media activity relevant and proportional to the needs of the case, and could constitute after-acquired evidence of the plaintiff's potential FMLA abuse, because it was limited to the plaintiff's social media posts on the dates where he took FMLA leave. Id.

---

[1] On March 8, 2023, nine days prior to Plaintiff's termination, a Human Resources Supervisor for Defendant generated an email to a third party leave processor that read, "We are noting a pattern of usage for [Plaintiff]. The majority of days she uses is connected to a day off. Can we review this pattern with the physician to confirm it is consistent with the care her family member needs." The email contained a chart noting that Plaintiff's FMLA leave was allegedly connected to a day off on fourteen occasions. ECF No. 15 at 7-9.

Defendant's reframed RFPs 4 and 5 similarly limit its discovery requests to the dates where Plaintiff took FMLA leave [ECF No. 15]. Likewise, in <u>Norman v. Beasley Mezzanine Holdings</u>, Civ. No. 10-211, 2011 WL 13371325 (E.D.N.C. June 21, 2011), where the plaintiff was fired for insubordination, the court granted the defendant's discovery requests for information to prove that the plaintiff's absences and tardiness were due to reasons other than her disability. <u>Id.</u> at *1. While the plaintiff in that case had already produced evidence from Facebook to support the defendant's suspicions, Defendant in this case has represented that from October 2022 through February 2023, Defendant noted fourteen total instances of Plaintiff utilizing her FMLA/FLA leave in conjunction with paid time off or providing very little notice for when she would take such leave. ECF No. 16 at 5. Therefore, as in <u>Norman</u>, the Court finds that under the broad standards of Rule 26 relevancy, while Defendant represents that it terminated Plaintiff's employment because of time theft and not because of misuse of leave, that alone does not entirely foreclose the relevancy and discoverability of the documents and records sought in amended RFPs 4 and 5 in light of the pre-existing basis supporting Defendant's requests.[2]

However, on the current record, the Court finds that RFP 6 is not proportional to the needs of this case. Defendant's request, even as reframed, seeks all banking information on days that Plaintiff took FMLA leave. The Court finds that while this could conceivably lead to some relevant information, it is highly intrusive and could create confusion by creating the appearance that Plaintiff was abusing her FMLA leave when Plaintiff simply incurred incidental expenses on her FMLA/FLA days. Redactions alone do not assuage the Court's concern in this regard. Defendant may review any relevant material produced in response to RFPs 4 and 5 and depose Plaintiff.

---

[2] The Court also notes that to the extent Plaintiff maintains that Defendant's monitoring of her leave usage amounted to discriminatory and retaliatory animus, RFPs 4 and 5 seek relevant information.

Should evidence arise that warrants a renewal of this discovery application, the Court would consider it at the appropriate time, remaining mindful that discovery in this case cannot and will not become a fishing expedition.

<u>Conclusion</u>

In sum, the Court finds that Defendant's reframed RFPs 4 and 5 are relevant to Plaintiff's FMLA interference and retaliation claims and proportional to the needs of this case. The Court, however, denies Defendant's request to order a production to RFP 6. Plaintiff shall respond to the reframed requests for production within 30 days of the order. The parties shall submit a proposed case management schedule within 14 days of this order. The Court will schedule a telephone status conference in a separate text order.

**SO ORDERED**

<u>s/ Matthew J. Skahill</u>
MATTHEW J. SKAHILL
United States Magistrate Judge